Docket No. 24-cv-04275
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
============================================X
CARMINE FORMICHELLI and MICHELE FORMICHELLI,

                                          Plaintiffs,                **COMPLAINT**

     -against-                                  Civil Docket No.:

ASSOCIATED UNIVERSITIES, INC., ITW PRO BRANDS,
ITW PERMATEX CANADA, and ILLINOIS TOOL
WORKS, INC.,

                                        Defendants.
============================================X

       Plaintiffs CARMINE FORMICHELLI and MICHELE FORMICHELLI, by their attorneys

JOSEPH LANNI and THE JACOB D. FUCHSBERG LAW FIRM, L.L.P., as and for their

Verified Complaint, upon information and belief, allege the following:


**PARTIES**

1.  At all times subsequently referenced, plaintiff CARMINE FORMICHELLI was and is a

    resident, domicile, and citizen of the State of New York.


2.  At all times subsequently referenced, plaintiff CARMINE FORMICHELLI[1] resides at 28

    Hasting Drive, Ridge, NY  11961.

---

[1] CARMINE FORMICHELLI is variously referred to as Mr. FORMICHELLI and FORMICHELLI throughout this
Complaint.

3.  At all times subsequently referenced, plaintiff MICHELE FORMICHELLI was and is a resident, domicile, and citizen of the State of New York.

4.  At all times subsequently referenced, plaintiff MICHELE FORMICHELLI resides at 28 Hasting Drive, Ridge, NY  11961.

5.  At all times subsequently referenced, defendant ITW PRO BRANDS was and is a foreign corporation organized and existing under the laws of the state of Kansas.

6.  At all times subsequently referenced, defendant ITW PRO BRANDS was and is a foreign corporation with its principal place of business located at 805 E Old 56 Hwy, Olathe, Kansas 66061.

7.  At all times subsequently referenced, defendant ITW PRO BRANDS was and is a foreign corporation that conducted business operations in the State of New York.

8.  At all times subsequently referenced, defendant ITW PRO BRANDS was and is a foreign corporation that transacted business within the State of New York.

9.  At all times subsequently referenced, defendant ITW PRO BRANDS was and is a foreign corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

2

10. At all times subsequently referenced, defendant ITW PRO BRANDS was and is a foreign corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

11. At all times subsequently referenced, defendant ITW PRO BRANDS was and is a foreign corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

12. At all times subsequently referenced, defendant ITW PRO BRANDS was and is a foreign corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities and transactions within the State of New York.

13. At all times subsequently referenced, defendant ITW PRO BRANDS was and is a subsidiary, division or unit of defendant ILLINOIS TOOL WORKS.

14. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a foreign corporation organized and existing under the laws of the Province of Ontario, Canada.

15. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a foreign corporation with its principal place of business located at 2360 Bristol Circle, Unit 101, Oakville, ON L6H 6M5.

16. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a subsidiary company of defendant ILLINOIS TOOL WORKS, INC.

17. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a foreign corporation that conducted business operations in the State of New York.

18. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a foreign corporation that transacted business within the State of New York.

19. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a foreign corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

20. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a foreign corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

21. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a foreign corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

22. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a foreign corporation that derived substantial revenue from interstate or international commerce

in the regular course of its business operations, activities and transactions within the State of New York.

23. At all times subsequently referenced, defendant ITW PERMATEX CANADA was and is a subsidiary, division or unit of defendant ILLINOIS TOOL WORKS.

24. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was and is a foreign corporation organized and existing under the laws of the State of Delaware.

25. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was and is a foreign corporation with its principal place of business located at 155 Harlem Ave., Glenview, IL 60025.

26. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was and is a foreign corporation that conducted business operations in the State of New York.

27. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was and is a foreign corporation that transacted business within the State of New York.

28. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was and is a foreign corporation that derived substantial revenue from conducting business operations, activities, and transactions in the State of New York.

29. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was and is a foreign corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

30. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was and is a foreign corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

31. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was and is a foreign corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities, and transactions within the State of New York.

32. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was the parent corporation of defendants ITW PRO BRANDS and ITW PERMATEX CANADA; defendants ITW PRO BRANDS and ITW PERMATEX CANADA were the wholly owned subsidiaries of ILLINOIS TOOL WORKS, INC.

33. At all times subsequently referenced, defendants ITW PRO BRANDS and ITW PERMATEX CANADA were wholly owned subsidiaries that were operated, managed, supervised, directed, and controlled by defendant ILLINOIS TOOL WORKS, INC., to the extent that the parent corporate entity entirely dominated the subsidiary corporate entities and derived substantial benefit from the profit, revenue and assets of the subsidiaries.

34. At all times subsequently referenced, defendant ILLINOIS TOOL WORKS, INC., was the corporate alter ego of defendants ITW PRO BRANDS and ITW PERMATEX CANADA and vice versa.

35. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation organized and existing under the laws of the State of New York.

36. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation with its principal place of business located at 1400 16th Street NW, Washington, DC  20036-2252.

37. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that conducted business operations in the State of New York.

38. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that transacted business within the State of New York.

39. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

40. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

41. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

42. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities and transactions within the State of New York.

43. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that operates, manages, directs, controls and supervises facilities, including research laboratories, for the U.S. government.

44. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that operates, manages, directs, controls and supervises facilities, including research laboratories, for the U.S. Department of Energy (USDOE).

45. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was the operating contractor that operated, managed, directed, controlled and supervised a facility,

8

including a research laboratory, for the U.S. Department of Energy known as Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

46. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., occupied, operated, managed, directed, controlled, and supervised the land, property, buildings, structures and appurtenances known as Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

47. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was in possession of the land, property, buildings, structures and appurtenances known as Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

48. At all times subsequently referenced, the U.S. Department of Energy (USDOE) owned Brookhaven National Laboratory.

## **JURISDICTION**

49. The subject matter jurisdiction of this Court is invoked on the grounds that the defendants' transactions, acts, omissions, and conduct which form, in pertinent part, the factual basis of the causes of action in plaintiff's Complaint occurred at Brookhaven National Laboratory on a federal enclave, i.e., on land owned by and under the jurisdiction of the U.S. Department of Energy, that is located within the Town of Upton, County of Suffolk, and State of New York.

(See, Schiappa v. Brookhaven Science Associates, LLC, 403 F. Supp. 2d 230 (E.D.N.Y. 2005)).

50. Moreover, the jurisdiction of this Court over the defendants is invoked on the grounds that the defendants' transactions, acts, omissions, and conduct which form, in pertinent part, the factual basis of the causes of action in plaintiff's Complaint occurred in the State of New York. The defective product which, in pertinent part, caused, contributed to, and was a substantial factor resulting in the plaintiff's injuries was marketed, distributed, sold and/or placed into the stream of commerce in the State of New York.

**VENUE**

51. The venue of this action is premised upon the defendants' transactions, acts, omissions, and conduct which form, in pertinent part, the factual basis of the causes of action in plaintiff's Complaint having occurred on the grounds of a U.S. Department of Energy (USDOE) owned laboratory and research facility, i.e., Brookhaven National Laboratory, that is a federal enclave located in the Eastern District of New York. (See, 28 U.S.C. §1391(b)(2)).

**JURY DEMAND**

52. Plaintiff demands trial by jury of all issues presented in this action that are triable by a jury as of right pursuant to the applicable statutes and court rules.

## **INTRODUCTION**

53. This action is for injuries sustained by plaintiff CARMINE FORMICHELLI through his exposure to toxic chemicals while employed as an electrician at Brookhaven National Laboratory (BNL) during the years 2009 – 2017.

54. Mr. FORMICHELLI was exposed to toxic chemicals at Brookhaven National Laboratory in two ways.

55. First, Mr. FORMICHELLI was exposed to numerous toxic chemicals polluting and contaminating the environment at Brookhaven National Laboratory during the years that he worked there.

56. Second, Mr. FORMICHELLI was exposed to a toxic chemical, trichloroethylene (TCE), contained in a solvent known as LPS HDX Aerosol Heavy Duty Degreaser that he regularly used in the course of his job duties at Brookhaven National Laboratory.

57. Defendant ASSOCIATED UNIVERSITIES, INC., (AUI) was the contractor that operated, possessed, controlled, managed, supervised and directed Brookhaven National Laboratory during the years 1947 – 1998.

58. Defendant AUI extensively polluted and contaminated the environment at Brookhaven National Laboratory.

59. Defendant AUI's negligence caused Brookhaven National Laboratory to be polluted and contaminated with toxic chemicals throughout the time that Mr. FORMICHELLI worked there.

60. Defendant AUI's legacy environmental pollution and contamination[2] of Brookhaven National Laboratory (BNL) caused Mr. FORMICHELLI to be exposed to dangerous levels of toxic chemicals, including, but not limited to, trichloroethylene (TCE), tetrachloroethylene (PCE), manganese, polychlorinated biphenyls (PCB), paraquat, and other herbicides throughout the time that he worked as an electrician at the site.

61. Defendants ILLINOIS TOOL WORKS, ITW PRO BRANDS and ITW PERMATEX CANADA designed, manufactured, marketed, distributed, sold, and/or placed into the stream of commerce in New York a product known as LPS HDX Aerosol Heavy Duty Degreaser which contained 90% - 100% trichloroethylene (TCE).

62. LPS HDX Aerosol Heavy Duty Degreaser was dangerously defective and not reasonably safe for several reasons.

63. LPS HDX Aerosol Heavy Duty Degreaser containers did not properly, adequately and conspicuously warn users about all the human health hazards presented by the TCE solvent.

---

[2] "Legacy environmental pollution" or "legacy environmental contamination" is the environmental pollution that remains on, within and in the land, soil, groundwater, buildings and structures in a location after the polluter has ceased ownership, operation, possession, control or management of the site or premises or has ceased activities at a site.

64. LPS HDX Aerosol Heavy Duty Degreaser containers did not properly, adequately and conspicuously inform users about all the human health hazards presented by the TCE solvent.

65. LPS HDX Aerosol Heavy Duty Degreaser containers did not properly, adequately and conspicuously instruct users about the safe and proper use of the TCE solvent.

66. LPS HDX Aerosol Heavy Duty Degreaser was defectively designed or manufactured because the spray mechanism on the containers delivered the TCE solvent in a pattern that excessively dispersed fumes, vapors, mist and droplets rather than in a more concentrated dispersal pattern or stream that reduced or minimized fume inhalation and ingestion and trans-dermal contact.

67. Mr. FORMICHELLI's exposure to dangerous levels of toxic chemicals, including TCE, PCE manganese, PCB, paraquat and other herbicides, while working at BNL during the period 2009 – 2017 caused, contributed to or was a substantial factor resulting in his development of Parkinson's disease.

68. Mr. FORMICHELLI was diagnosed with Parkinson's disease on or about April 3, 2023.

69. Mr. FORMICHELLI was informed by a treating physician that his exposure to toxic chemicals at BNL more likely than not caused or contributed to his Parkinson's disease on or about May 25, 2023.

## FACTS COMMON TO ALL CAUSES OF ACTION

### AUI Caused Toxic Chemical Pollution, Contamination &
### Exposures at Brookhaven National Laboratory
### Resulting in Hazards to Human Health That
### Persist to the Present at Dangerous Levels

70. The events, actions, conduct, activities, omissions, transactions, occurrences, incidents and circumstances at issue in this matter include, but are not limited to, the following facts:

71. Brookhaven National Laboratory (BNL) occupies an approximately 5,300-acre site in Upton, NY, in Suffolk County on Long Island.

72. BNL is a research laboratory and facility with numerous buildings, structures and scientific facilities.

73. BNL has existed since 1947.

74. USDOE has provided for BNL's operation by "operating contract" with private "operating contractors" since 1947.

75. The annual "operating contracts" were lucrative to whoever was the "operating contractor".

76. The "operating contractor" for BNL during the period 1947 – 1998 was defendant AUI.

77. AUI collected billions of taxpayer dollars in revenue as the "operating contractor" for BNL.

14

78. USDOE terminated the "operating contract" with AUI in 1998 for the latter's breach and gross neglect of its contractual duties and responsibilities to safely and properly operate BNL.

79. Pursuant to the "operating contract", the "operating contractor" for BNL was responsible to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

80. The responsibilities of the BNL "operating contractor" included, but were not limited to, the following: (1) protection and conservation of the surrounding environment and environmental resources at the laboratory and on the site; (2) formulation, development, promulgation, and implementation of safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protection of the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

81. The responsibilities of the BNL "operating contractor" amounted to duties to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and

15

on the site.

82. The responsibilities of the BNL "operating contractor" amounted to duties to use reasonable care to (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

83. AUI extensively used Trichloroethylene (TCE) at BNL in pertinent part, as a solvent, degreaser, cleaning solution and disinfecting agent despite its known toxicity to humans.

84. AUI extensively polluted BNL with toxic chemicals, including TCE, PCE, manganese, PCB, paraquat and other herbicides, during the years that it was the operating contractor.

85. AUI extensively used toxic chemicals, including TCE, PCE, manganese, PCB, and paraquat and other herbicides, at BNL in the course of the work, operations, maintenance, services, research and other activities performed in the buildings, structures, and facilities on the site.

16

86. The U.S. Environmental Protection Agency (USEPA) declared BNL a Superfund Site in 1989, in pertinent part, due to AUI's severe and pervasive environmental pollution and toxic contamination in the buildings, structures, facilities, groundwater, soils, waste disposal systems, sewer system, cesspools, surface waters, water supply, and ambient air throughout the site.

87. AUI did not safely use toxic chemicals at BNL.

88. AUI did not safely discharge, release, discard and dispose of toxic chemicals at BNL.

89. AUI's protracted and continuous failures to safely use, discharge, release, discard and dispose of toxic chemicals at BNL directly caused severe and extensive environmental pollution and contamination of BNL's soils, groundwater, surface water, water supply, ambient air, buildings, facilities, structures and land.

90. AUI's extensive toxic chemical environmental pollution and contamination of BNL subjected workers at the site, including CARMINE FORMICHELLI, to exposures that caused extreme hazards, dangers, and risks to human health, safety and welfare long after the USDOE terminated AUI as the lab's "operating contractor".

91. AUI violated the terms of the "operating contract" by failing to meet its responsibilities, duties and obligations as the BNL "operating contractor" to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations,

17

activities, services and functions at the laboratory and on the site due to its extensive toxic chemical environmental pollution and contamination.

92. AUI violated the terms of the "operating contract" by failing to meet its responsibilities, duties and obligations as the BNL "operating contractor" to ensure the following properly occurred: (1) protection and conservation of the surrounding environment and environmental resources at the laboratory and on the site; (2) formulation, development, promulgation, and implementation of safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protection of the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

93. AUI violated its contractual duties to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site due to its extensive toxic chemical environmental pollution and contamination of BNL.

94. AUI violated its contractual duties to use reasonable care to (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2)

formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

### AUI's Severe and Extensive Toxic Chemical Pollution and Contamination at BNL Violated the Operating Contract & Federal Law

95. Despite knowledge of the hazards, dangers and risks to human health, safety and welfare, AUI failed to safely use, store, handle, discharge, release, discard and dispose of toxic chemicals at BNL resulting in severe and extensive environmental pollution and contamination throughout the laboratory site.

96. AUI's failure to safely use, store, handle, discharge, release, discard and dispose of toxic chemicals at BNL was protracted and continuous throughout its tenure as the "operating contractor".

97. AUI's foregoing acts, omissions, and conduct violated the terms of its operating contract with USDOE for BNL and led to its dismissal as the lab's operating contractor in 1998.

98. AUI violated the Safe Drinking Water Act (SDWA), Clean Air Act (CAA), Resource

19

Conservation and Recovery Act (RCRA) and Toxic Substance Control Act (TSCA), in pertinent part, because of its continuous and protracted failures to safely use, store, handle, discharge, release, discard and/or dispose of toxic chemicals at BNL resulting in severe and extensive environmental pollution and contamination at the site.

**<u>CARMINE FORMICHELLI was Exposed to Toxic Chemicals at BNL</u>**
**<u>That Are Known to Cause Serious Illnesses and Death in Humans</u>**

99. CARMINE FORMICHELLI was exposed to numerous toxic chemicals at BNL that are known to be hazardous to human health.

100. Those toxic chemicals included, but were not limited to, TCE, PCE, manganese, PCB, paraquat, rotenone and other herbicides.

101. TCE was classified and scientifically accepted as a toxic substance hazardous to human health in non-cancerous ways since the 1950's.

102. TCE exposure can cause cancers and other serious diseases in humans through mutagenic, genotoxic and non-genotoxic mechanisms.

103. TCE exposure can cause Parkinson's disease, kidney cancer, liver cancer, non-Hodgkin's lymphoma, multiple myelomas, adult leukemias, anaplastic anemia, myelodysplastic syndromes, and end stage renal disease among other illnesses, injuries and conditions.

104. Pathogenic TCE exposure routes are through the inhalation and ingestion of micro-droplets, fumes, and vapors and trans-dermal contact with droplets and liquids.

105.    Manganese exposure can cause Parkinson's disease.

106.    The route of pathogenic manganese exposure is through the inhalation of dust and fumes.

107.    PCB exposure can cause Parkinson's disease.

108.    Pathogenic PCB exposure routes are through inhalation, ingestion, and dermal contact.

109.    Paraquat and other herbicides, like rotenone, can cause Parkinson's disease.

110.    Pathogenic paraquat, rotenone and other herbicide exposure routes are through inhalation, ingestion, dermal and ocular contact.

## CARMINE FORMICHELLI's Employment at BNL

111.    CARMINE FORMICHELLI, now 60 years old, worked as an electrician at Brookhaven National Laboratory during the years 2009 – 2018.

112.    Mr. FORMICHELLI was employed by Brookhaven Science Associates, LLC (BSA) during that time.

113.    Mr. FORMICHELLI was not an employee of AUI or an AUI subcontractor when he worked at BNL during the period 2009 - 2018.

**CARMINE FORMICHELLI's Toxic Chemical Exposure at BNL
Caused His Parkinson's Disease**

114.    During the years 2009 – 2018, CARMINE FORMICHELLI worked in numerous locations

on the BNL campus that were polluted and contaminated with toxic chemicals. Those locations

included, but were not limited to, the following: Central Campus area, the "500 Buildings",

Light Source I, Light Source II, Tandem Van de Graaff, Alternating Gradient Synchrotron

(AGS), Relativistic Heavy Ion Collider (RHIC), High Flux Beam Reactor (HFBR), Buildings

900, 901, 904, 911, 912, 922, the North Area Facility, the "Boneyard", and numerous other

buildings, facilities, structures, appurtenances, areas and places.


115.    Mr. FORMICHELLI was exposed to hazardous, dangerous and unsafe levels of toxic

chemical pollution and contamination at BNL nearly every day that he worked there as an

electrician.


116.    Those toxic chemicals included, but were not limited to, TCE, PCE, manganese, PCB,

paraquat, rotenone and other herbicides.


117.    Mr. FORMICHELLI extensively used TCE in the course of his work duties.


118.    Mr. FORMICHELLI used a TCE product known as LPS HDX Aerosol Heavy Duty

Degreaser.


119.    LPS HDX Aerosol Heavy Duty Degreaser was manufactured by defendants ITW PRO

BRANDS and ILLINOIS TOOL WORKS.

120.   LPS HDX Aerosol Heavy Duty Degreaser was distributed, supplied and/or sold by defendants ITW PERMATEX CANADA and ILLINOIS TOOL WORKS.

121.   LPS HDX Aerosol Heavy Duty Degreaser was marketed by defendants ITW PRO BRANDS, ITW PERMATEX CANADA and ILLINOIS TOOL WORKS.

122.   LPS HDX Aerosol Heavy Duty Degreaser was an aerosol solvent that contained 90% – 100% trichloroethylene (TCE).

123.   Mr. FORMICHELLI's employer, BSA, provided him with cans of LPS HDX Aerosol Heavy Duty Degreaser to use in the course of his work duties.

124.   Mr. FORMICHELLI's employer, BSA, instructed him to use LPS HDX Aerosol Heavy Duty Degreaser to use in the course of his work duties.

125.   Mr. FORMICHELLI was unaware that LPS HDX Aerosol Heavy Duty Degreaser contained 90%-100% trichloroethylene, that trichloroethylene was a toxic chemical or that exposure to the product could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

126.   Mr. FORMICHELLI was not made aware that LPS HDX Aerosol Heavy Duty Degreaser contained 90%-100% trichloroethylene, that trichloroethylene was a toxic chemical, or that exposure to the product could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

127.    Mr. FORMICHELLI was unaware that there was pervasive toxic chemical pollution and contamination at BNL in the locations where he worked or that exposure to those toxic chemicals could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

128.    Mr. FORMICHELLI was not made aware that there was pervasive toxic chemical pollution and contamination at BNL in the locations where he worked or that exposure to those toxic chemicals could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

129.    Mr. FORMICHELLI's employer, BSA, did not provide him with personal protective equipment sufficient to prevent exposure to toxic chemicals to use on the job.

130.    The LPS HDX Aerosol Heavy Duty Degreaser containers sold to BSA did not have proper, adequate and/or conspicuous warnings about all the human health hazards presented by exposure to the product and, in particular, it did not warn about the risks of contracting or developing Parkinson's Disease or Parkinsonism due to exposure.

131.    The LPS HDX Aerosol Heavy Duty Degreaser SDSs and MSDSs did not have warnings about all the human health hazards presented by the product and did not warn about the risks of contracting or developing Parkinson's Disease or Parkinsonism to people exposed to the product.

132.    Mr. FORMICHELLI's work at BNL exposed him to toxic chemicals, including, but not

limited to, TCE, PCE, manganese, PCB, paraquat, rotenone and other herbicides throughout the site.

133.   Mr. FORMICHELLI's toxic chemical exposures occurred throughout the time he was employed at BNL. Those exposures include, but are not limited to, the following examples:

134.   Electrical work on used transformers that were taken out of BNL's "Boneyard" to install into prototypes for power transmission. Those transformers, placed in the "Boneyard" by AUI, lacked warnings that they were filled with PCB.

135.   Electrical work cleaning the dirt and corrosion off the used transformers with copious amounts of LPS HDX Aerosol Heavy Duty Degreaser containing 90%-100% TCE.

136.   Electrical work removing old fluorescent lighting ballasts that had been installed by AUI while retrofitting the light fixtures in buildings throughout the site. The old lighting ballasts previously installed by AUI lacked warnings that they contained PCB.

137.   Electrical work cleaning the various electrical components in the light fixtures with copious amounts of LPS HDX Aerosol Heavy Duty Degreaser during the retrofitting process.

138.   Electrical work at Light Source I, Light Source II, Tandem de Graaff, Alternating Gradient Synchrotron (AGS), Relativistic Heavy Ion Collider (RHIC) and High Flux Beam Reactor (HFBR) which had accumulated high levels of manganese dust and particles during AUI's tenure as the operating contractor at the site.

139.    Electrical work at Light Source I, Light Source II, Tandem de Graaff, Alternating Gradient Synchrotron (AGS), Relativistic Heavy Ion Collider (RHIC) and High Flux Beam Reactor (HFBR); those facilities were regularly and thoroughly cleaned with TCE and PCE solvents.

140.    Electrical work using copious amounts of LPS HDX Aerosol Heavy Duty Degreaser in the various buildings connected to the AGS/RHIC complex, including Buildings 900, 901, 902, 904, 911, 912 and 922.

141.    Electrical work using copious amounts of LPS HDX Aerosol Heavy Duty Degreaser in the North Area Facility.

142.    Electrical work using copious amounts of LPS HDX Aerosol Heavy Duty Degreaser in every building on the BNL campus including the Central Campus area that includes the "500 Buildings".

143.    Outdoor electrical work using copious amounts of LPS HDX Aerosol Heavy Duty Degreaser on the "line crews" in locations with heavy foliage that had been subjected to herbicides such as paraquat, rotenone, permethrin, organochlorines, beta-hexachlorocyclohexane, and dichlorophenoxyacetic acid (2,4-D).

144.    Exposure to VOC vapor intrusion emanating from the soils, groundwater, buildings, facilities and structures into the ambient indoor and outdoor air throughout the BNL campus.

145.    Consumption of water drawn from BNL's toxic chemical polluted and contaminated

26

groundwater including the ingestion of coffee and tea brewed with water from the polluted and contaminated supply.

146.    Trans-dermal contact through the washing of hands and utensils with BNL's toxic chemical polluted and contaminated water supply.

147.    The foregoing examples demonstrate some of the myriad ways that Mr. FORMICHELLI was exposed to the toxic chemicals polluting and contaminating BNL during the period of time that he worked as an electrician at the site.

148.    Mr. FORMICHELLI was diagnosed with Parkinson's disease, on or about April 3, 2023.

149.    Mr. FORMICHELLI's exposure to toxic chemicals at BNL caused, contributed to and was a substantial factor resulting in his Parkinson's disease and consequent related conditions, complications, injuries, illnesses, harm and losses.

## FIRST CAUSE OF ACTION:
## NEGLIGENCE

150.    Plaintiffs repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "149" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

151.    Pursuant to its contractual responsibilities as the BNL "operating contractor", defendant AUI owed duties to all employees, contractors, subcontractors, visitors, occupants and other people at and within the vicinity of the site, including plaintiff CARMINE FORMICHELLI,

27

to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

152.  Pursuant to its contractual responsibilities as the BNL "operating contractor", defendant AUI owed duties to all employees, contractors, subcontractors, visitors, occupants, and other people at and within the vicinity of the site, including plaintiff CARMINE FORMICHELLI, to use reasonable care to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site from pollution and contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from pollution and contamination; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from pollution and contamination; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

153.  Pursuant to its contractual responsibilities as the BNL "operating contractor", defendant AUI owed duties to use reasonable care to prevent toxic chemical environmental pollution and contamination so as to ensure the safety of the site and protect the health, safety and welfare

of people at, on or in the vicinity of the site including plaintiff CARMINE FORMICHELLI.

154.    Pursuant to its contractual responsibilities as the BNL "operating contractor", defendant AUI owed duties to all employees, contractors, subcontractors, visitors, occupants and other people at and within the vicinity of the site, including plaintiff CARMINE FORMICHELLI, to use reasonable care to safely and properly operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site.

155.    Pursuant to its contractual responsibilities as the BNL "operating contractor", defendant AUI owed duties to all BNL employees, contractors, subcontractors, workers, visitors, occupants and other people at or in the vicinity of the site, including plaintiff CARMINE FORMICHELLI, to use reasonable care in properly and adequately providing for the safe use, handling, storage, discharge, release, discarding and disposal of toxic chemicals.

156.    Defendant AUI breached and violated the duties owed to plaintiff CARMINE FORMICHELLI to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

157.    Defendant AUI breached and violated the duties owed to plaintiff CARMINE FORMICHELLI to properly (1) protect and conserve the surrounding environment and

environmental resources at the laboratory and site from pollution and contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from pollution and contamination; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from pollution and contamination; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

158.   Defendant AUI breached and violated the duties owed to plaintiff CARMINE FORMICHELLI to safely and properly operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site.

159.   Defendant AUI breached and violated the duties owed to plaintiff CARMINE FORMICHELLI to safely and properly prevent environmental pollution and toxic contamination so as to ensure the safety of the site and protect the health, safety and welfare of people at, on or in the vicinity of the site.

160.    Defendant AUI breached and violated the duties owed to plaintiff CARMINE
        FORMICHELLI to properly and adequately ensure the safe use, storage, handling, discharge,
        release, discarding and disposal of toxic chemicals.

161.    Defendant AUI negligently failed to safely and properly operate, control, manage,
        supervise, direct, administer, oversee and conduct all BNL research, work, operations,
        activities, services and functions.

162.    Defendant AUI negligently failed to properly (1) protect and conserve the surrounding
        environment and environmental resources at the laboratory and site from pollution and
        contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols,
        rules, regulations, standards, guidelines and measures to protect the site and those people on
        or near the site against environmental pollution, toxic contamination, and hazards, dangers and
        risks to health, safety and welfare from pollution and contamination; (3) ensure compliance
        with safety protocols, rules, regulations, standards, guidelines and measures to protect the site
        and those people on or near the site against environmental pollution, toxic contamination and
        hazards, dangers and risks to human health, safety and welfare from pollution and
        contamination; and (4) protect the health, safety and welfare of employees, contractors,
        visitors, occupants, and the general public at or in the vicinity of the site against the hazards,
        dangers, and risks presented by environmental pollution and toxic contamination.

163.    Defendant AUI negligently failed to safely and properly operate, control, direct, manage,
        supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research,

business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site.

164.    Defendant AUI negligently failed to safely and properly prevent environmental pollution and toxic contamination so as to ensure the safety of the site and protect the health, safety and welfare of people at, on or in the vicinity of the BNL site.

165.    Defendant AUI negligently failed to properly and adequately provide for the safe use, handling, storage, discharge, release, discarding and disposal of toxic chemicals at BNL.

166.    Defendant AUI's foregoing negligence and breaches and violations of the duties owed to plaintiff CARMINE FORMICHELLI and others caused BNL to be severely and extensively polluted and contaminated with toxic chemicals.

167.    Defendant AUI's severe and extensive toxic chemical pollution and contamination at BNL subjected plaintiff CARMINE FORMICHELLI to exposure to hazards, dangers and risks to his health, safety and welfare.

168.    Defendant AUI's negligent severe and extensive toxic chemical pollution and contamination at BNL caused, contributed to and were substantial factors resulting in plaintiff plaintiff CARMINE FORMICHELLI's Parkinson's disease and other related conditions, complications, illnesses, injuries, harm and losses.

32

169.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., owed a duty of reasonable care to purchasers and users of LPS HDX Aerosol

Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to manufacture,

market, distribute, sell, and place into the stream of commerce a product that was reasonably

safe.

170.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., owed a duty of reasonable care to purchasers and users of LPS HDX Aerosol

Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to manufacture,

market, distribute, sell, and place into the stream of commerce products that did not subject

users to an unreasonable risk of harm.

171.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., owed a duty of reasonable care to purchasers and users of LPS HDX Aerosol

Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to provide proper,

adequate and conspicuous warnings users about all the human health hazards presented by its

product.

172.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., owed a duty of reasonable care to purchasers and users of LPS HDX Aerosol

Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to provide proper,

adequate and conspicuous information to users about all the human health hazards presented

33

by its product.

173.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
WORKS, INC., owed a duty of reasonable care to purchasers and users of LPS HDX Aerosol
Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to provide proper,
adequate and conspicuous instructions for the proper and safe use of its product.

174.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
WORKS, INC., breached and violated their duties to purchasers and users of LPS HDX
Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to
manufacture, market, distribute, sell, and place into the stream of commerce in a reasonably
safe condition.

175.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
WORKS, INC., breached and violated their duties to purchasers and users of LPS HDX
Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to
manufacture, market, distribute, sell, and place into the stream of commerce LPS HDX Aerosol
Heavy Duty Degreaser in a condition that did not subject him to an unreasonable risk of harm.

176.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
WORKS, INC., breached and violated their duties to purchasers and users of LPS HDX
Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to provide
proper, adequate and conspicuous warnings about all the human health hazards presented by

its product.

177.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
         WORKS, INC., breached and violated their duties to purchasers and users of LPS HDX
         Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to provide
         proper, adequate and conspicuous instructions and information about all the human health
         hazards presented by its product.

178.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
         WORKS, INC., breached and violated their duties to purchasers and users of LPS HDX
         Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, to provide
         proper, adequate and conspicuous instructions for the proper and safe use of its product.

179.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
         WORKS, INC., negligently failed to manufacture, market, distribute, sell, and place into the
         stream of commerce LPS HDX Aerosol Heavy Duty Degreaser in a reasonably safe condition.

180.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
         WORKS, INC., negligently failed to manufacture, market, distribute, sell, and place into the
         stream of commerce LPS HDX Aerosol Heavy Duty Degreaser in a condition that did not
         subject users to an unreasonable risk of harm.

181.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., negligently failed to provide proper, adequate and conspicuous warnings to users of LDS HDX Aerosol Heavy Duty Degreaser about all the human health hazards presented by this product.

182.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., negligently failed to provide proper, adequate and conspicuous instructions and information to users of LDS HDX Aerosol Heavy Duty Degreaser about all the human health hazards presented by this product.

183.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., negligently failed to provide proper, adequate and conspicuous instructions to users of LDS HDX Aerosol Heavy Duty Degreaser for the proper and safe use of this product.

184.    The foregoing negligence of defendants AUI, ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS caused, contributed to and was a substantial factor resulting in plaintiff CARMINE FORMICHELLI's Parkinson's disease and other related conditions, complications, illnesses, injuries, harm and losses, conscious pain and suffering, grave injuries, loss of function and use of an organ system, consequential medical sequelae, disability, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

185.    The injuries, illnesses, harm, losses and damages sustained by plaintiff CARMINE FORMICHELLI were caused solely and wholly by virtue of the foregoing negligent acts,

omissions and conduct of defendants AUI, ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS and were in no way caused and/or contributed to by Mr. FORMICHELLI.

186.   By reason of the foregoing, plaintiff CARMINE FORMICHELLI is entitled to compensatory and punitive damages from the defendants for his past and future non-economic and economic injuries, harm and losses.

187.   By reason of the foregoing, plaintiff CARMINE FORMICHELLI demands judgment against the defendants in the amount of $25,000,000.00 in compensatory and punitive damages.

## SECOND CAUSE OF ACTION:
## STRICT PRODUCT LIABILITY - DESIGN DEFECT

188.   Plaintiffs repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "187" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

189.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., designed, manufactured, marketed, distributed, sold and placed into the stream of commerce a product known as LPS HDX Aerosol Heavy Duty Degreaser.

190.   LPS HDX Aerosol Heavy Duty Degreaser was sold to BSA for use by its workers at Brookhaven National Laboratory.

191.   Plaintiff CARMINE FORMICHELLI used LPS HDX Aerosol Heavy Duty Degreaser for its intended purposes as a degreaser and solvent during his work duties as a BNL electrician.

192.   Plaintiff CARMINE FORMICHELLI was exposed to the TCE contained in LPS HDX Aerosol Heavy Duty Degreaser as he used the product for its intended purposes.

193.   Plaintiff CARMINE FORMICHELLI was exposed to the TCE contained in LPS HDX Aerosol Heavy Duty Degreaser as the product was used by other BNL workers in the vicinity of his work locations.

194.   Plaintiff CARMINE FORMICHELLI was unaware that LPS HDX Aerosol Heavy Duty Degreaser contained 90%-100% trichloroethylene, that trichloroethylene was a toxic chemical or that exposure to the product could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

195.   Plaintiff CARMINE FORMICHELLI was not made aware that LPS HDX Aerosol Heavy Duty Degreaser contained 90%-100% trichloroethylene, that trichloroethylene was a toxic chemical, or that exposure to the product could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

196.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to design LPS HDX Aerosol Heavy Duty Degreaser so that it was

reasonably safe for users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI.

197.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to design LPS HDX Aerosol Heavy Duty Degreaser so that it did not subject users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI, to an unreasonable risk of harm.

198.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to design LPS HDX Aerosol Heavy Duty Degreaser so that containers provided proper, adequate and conspicuous warnings to users, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

199.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to design LPS HDX Aerosol Heavy Duty Degreaser so that containers provided proper, adequate and conspicuous information to users, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

200.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to design LPS HDX Aerosol Heavy Duty Degreaser so that containers provided proper, adequate and conspicuous instructions to users, including plaintiff CARMINE FORMICHELLI, about the safe and proper use of its product.

201.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., had a duty to design LPS HDX Aerosol Heavy Duty Degreaser containers,

spray nozzles and/or dispensary mechanisms in a reasonably safe condition that prevented,

eliminated, or avoided an unreasonable risk of harm to users and/or persons exposed to this

product, including plaintiff CARMINE FORMICHELLI.

202.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., designed, manufactured, marketed, distributed, sold and placed into the stream

of commerce LPS HDX Aerosol Heavy Duty Degreaser in a dangerously defective condition

that made it not reasonably safe for users and/or persons exposed to the product, including

plaintiff CARMINE FORMICHELLI.

203.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., designed, manufactured, marketed, distributed, sold and placed into the stream

of commerce LPS HDX Aerosol Heavy Duty Degreaser in a dangerously defective condition

that presented an unreasonable risk of harm to users and/or persons exposed to the product,

including plaintiff CARMINE FORMICHELLI.

204.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL

WORKS, INC., defectively designed LPS HDX Aerosol Heavy Duty Degreaser so that it was

not reasonably safe for users and/or persons exposed to the product, including plaintiff

CARMINE FORMICHELLI.

205.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively designed LPS HDX Aerosol Heavy Duty Degreaser so that it subjected users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI, to an unreasonable risk of harm.

206.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively designed LPS HDX Aerosol Heavy Duty Degreaser so that containers did not provide proper, adequate and conspicuous warnings to users, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

207.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively designed LPS HDX Aerosol Heavy Duty Degreaser so that containers did not provide proper, adequate and conspicuous information to users, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

208.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively designed LPS HDX Aerosol Heavy Duty Degreaser so that containers did not provide proper, adequate and conspicuous instructions to users, including plaintiff CARMINE FORMICHELLI, about the safe and proper use of its product.

41

209.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
        WORKS, INC., defectively designed LPS HDX Aerosol Heavy Duty Degreaser containers,
        spray nozzles and/or dispensary mechanisms in an unsafe condition that subjected users and/or
        persons exposed to this product, including plaintiff CARMINE FORMICHELLI, to an
        unreasonable risk of harm.

210.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL
        WORKS, INC., failed to balance the feasibility of safer alternative designs against existing
        risks of injury or illness; failed to take into account the reasonable cost of feasible safer
        alternative designs; failed to balance the risks of injury or illness against the utility and costs
        of feasible safer alternative designs; failed to develop feasible safer alternative designs
        providing the same functional purpose with reasonable price adjustments; and failed to take
        into account the improvements related to injury or illness prevention presented by feasible
        safer alternative designs.

211.    The dangerously defective condition of LPS HDX Aerosol Heavy Duty Degreaser as
        designed by defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS
        TOOL WORKS, INC., caused, contributed to and was a substantial factor resulting in plaintiff
        plaintiff CARMINE FORMICHELLI's Parkinson's disease and other related conditions,
        complications, consequential medical sequelae, illnesses, injuries, harm and losses, severe
        conscious pain and suffering, grave injuries, permanent loss of function and use of an organ
        system, permanent loss of function and use of limbs, disability, debilitation, infirmity,
        decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations

in activities of daily living, occupational disability, limitations and disability in activities of daily living, debilitation and infirmity, and loss of enjoyment of life and he will continue to suffer from the foregoing injuries, harm and losses throughout the remainder of his life.

212.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., are strictly liable for the dangerously defective design of LPS HDX Aerosol Heavy Duty Degreaser which caused, contributed to and was substantial factor resulting in plaintiff CARMINE FORMICHELLI's injuries, harm, losses and damages.

213.    The injuries, illnesses, harm, losses and damages sustained by plaintiff CARMINE FORMICHELLI were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS and were in no way caused and/or contributed to by the plaintiff.

214.    By reason of the foregoing, plaintiff CARMINE FORMICHELLI is entitled to monetary damages for past and future conscious pain and suffering, mental anguish and emotional distress, loss of income, medical expenses, and loss of enjoyment of life.

215.    By reason of the foregoing, plaintiff CARMINE FORMICHELLI is entitled to compensatory damages from the defendants for his past and future non-economic and economic injuries, harm, and losses.

216.    By reason of the foregoing, plaintiff CARMINE FORMICHELLI demands judgment

against the defendants in the amount of $25,000,000.00 in compensatory damages.

## THIRD CAUSE OF ACTION:
## STRICT PRODUCT LIABILITY – MANUFACTURING DEFECT

217.    Plaintiffs repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "216" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

218.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., designed, manufactured, marketed, distributed, sold and placed into the stream of commerce a product known as LPS HDX Aerosol Heavy Duty Degreaser.

219.    LPS HDX Aerosol Heavy Duty Degreaser was sold to BSA for use by its workers at Brookhaven National Laboratory.

220.    Plaintiff CARMINE FORMICHELLI used LPS HDX Aerosol Heavy Duty Degreaser for its intended purposes as a degreaser and solvent during his work duties as a BNL electrician.

221.    Plaintiff CARMINE FORMICHELLI was exposed to the TCE contained in LPS HDX Aerosol Heavy Duty Degreaser as he used the product for its intended purposes.

222.    Plaintiff CARMINE FORMICHELLI was exposed to the TCE contained in LPS HDX Aerosol Heavy Duty Degreaser as the product was used by other BNL workers in the vicinity of his work locations.

223.   Plaintiff CARMINE FORMICHELLI was unaware that LPS HDX Aerosol Heavy Duty Degreaser contained 90%-100% trichloroethylene, that trichloroethylene was a toxic chemical or that exposure to the product could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

224.   Plaintiff CARMINE FORMICHELLI was not made aware that LPS HDX Aerosol Heavy Duty Degreaser contained 90%-100% trichloroethylene, that trichloroethylene was a toxic chemical, or that exposure to the product could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

225.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to manufacture LPS HDX Aerosol Heavy Duty Degreaser so that it was reasonably safe for users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI.

226.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to manufacture LPS HDX Aerosol Heavy Duty Degreaser so that it did not subject users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI, to an unreasonable risk of harm.

227.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to manufacture LPS HDX Aerosol Heavy Duty Degreaser so that

containers provided proper, adequate and conspicuous warnings to users, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

228.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to manufacture LPS HDX Aerosol Heavy Duty Degreaser so that containers provided proper, adequate and conspicuous information to users, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

229.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to manufacture LPS HDX Aerosol Heavy Duty Degreaser so that containers provided proper, adequate and conspicuous instructions to users, including plaintiff CARMINE FORMICHELLI, about the safe and proper use of its product.

230.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to manufacture LPS HDX Aerosol Heavy Duty Degreaser containers, spray nozzles and/or dispensary mechanisms in a reasonably safe condition that prevented, eliminated, or avoided an unreasonable risk of harm to users and/or persons exposed to this product, including plaintiff CARMINE FORMICHELLI.

231.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., manufactured, marketed, distributed, sold and placed into the stream of commerce LPS HDX Aerosol Heavy Duty Degreaser in a dangerously defective condition that

made it not reasonably safe for users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI.

232.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., manufactured, marketed, distributed, sold and placed into the stream of commerce LPS HDX Aerosol Heavy Duty Degreaser in a dangerously defective condition that presented an unreasonable risk of harm to users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI.

233.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively manufactured LPS HDX Aerosol Heavy Duty Degreaser so that it was not reasonably safe for users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI.

234.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively manufactured LPS HDX Aerosol Heavy Duty Degreaser so that it subjected users and/or persons exposed to the product, including plaintiff CARMINE FORMICHELLI, to an unreasonable risk of harm.

235.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively manufactured LPS HDX Aerosol Heavy Duty Degreaser so that containers did not provide proper, adequate and conspicuous warnings to users, including

plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

236.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively manufactured LPS HDX Aerosol Heavy Duty Degreaser so that containers did not provide proper, adequate and conspicuous information to users, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

237.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively manufactured LPS HDX Aerosol Heavy Duty Degreaser so that containers did not provide proper, adequate and conspicuous instructions to users, including plaintiff CARMINE FORMICHELLI, about the safe and proper use of its product.

238.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., defectively manufactured LPS HDX Aerosol Heavy Duty Degreaser containers, spray nozzles and/or dispensary mechanisms in an unsafe condition that subjected users and/or persons exposed to this product, including plaintiff CARMINE FORMICHELLI, to an unreasonable risk of harm.

239.    The dangerously defective condition of LPS HDX Aerosol Heavy Duty Degreaser as manufactured by defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., caused, contributed to and was a substantial factor resulting

48

in plaintiff CARMINE FORMICHELLI's Parkinson's disease and other related conditions, complications, consequential medical sequelae, illnesses, injuries, harm and losses, severe conscious pain and suffering, grave injuries, permanent loss of function and use of an organ system, permanent loss of function and use of limbs, disability, debilitation, infirmity, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, occupational disability, limitations and disability in activities of daily living, debilitation and infirmity, and loss of enjoyment of life and he will continue to suffer from the foregoing injuries, harm and losses throughout the remainder of his life.

240.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., are strictly liable for the dangerous manufacturing defects of LPS HDX Aerosol Heavy Duty Degreaser which caused, contributed to and was substantial factor resulting in plaintiff CARMINE FORMICHELLI's injuries, harm, losses and damages.

241.   The injuries, illnesses, harm, losses and damages sustained by plaintiff CARMINE FORMICHELLI were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS and were in no way caused and/or contributed to by the plaintiff.

242.   By reason of the foregoing, plaintiff CARMINE FORMICHELLI is entitled to monetary damages for past and future conscious pain and suffering, mental anguish and emotional distress, loss of income, medical expenses, and loss of enjoyment of life.

243.   By reason of the foregoing, plaintiff CARMINE FORMICHELLI is entitled to compensatory damages from the defendants for his past and future non-economic and economic injuries, harm, and losses.

244.   By reason of the foregoing, plaintiff CARMINE FORMICHELLI demands judgment against the defendants in the amount of $25,000,000.00 in compensatory damages.

### FOURTH CAUSE OF ACTION: STRICT PRODUCT LIABILITY – FAILURE TO ADEQUATELY WARN

245.   Plaintiffs repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "244" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

246.   Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., designed, manufactured, marketed, distributed, sold and placed into the stream of commerce a product known as LPS HDX Aerosol Heavy Duty Degreaser.

247.   LPS HDX Aerosol Heavy Duty Degreaser was sold to BSA for use by its workers at Brookhaven National Laboratory.

248.   Plaintiff CARMINE FORMICHELLI used LPS HDX Aerosol Heavy Duty Degreaser for its intended purposes as a degreaser and solvent during his work duties as a BNL electrician.

50

249.    Plaintiff CARMINE FORMICHELLI was exposed to the TCE contained in LPS HDX Aerosol Heavy Duty Degreaser as he used the product for its intended purposes.

250.    Plaintiff CARMINE FORMICHELLI was exposed to the TCE contained in LPS HDX Aerosol Heavy Duty Degreaser as the product was used by other BNL workers in the vicinity of his work locations.

251.    Plaintiff CARMINE FORMICHELLI was unaware that LPS HDX Aerosol Heavy Duty Degreaser contained 90%-100% trichloroethylene, that trichloroethylene was a toxic chemical or that exposure to the product could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

252.    Plaintiff CARMINE FORMICHELLI was not made aware that LPS HDX Aerosol Heavy Duty Degreaser contained 90%-100% trichloroethylene, that trichloroethylene was a toxic chemical, or that exposure to the product could cause, contribute to and/or be a substantial factor resulting in Parkinson's disease.

253.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to provide proper, adequate and conspicuous warnings to users of LPS HDX Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, about all latent dangers resulting from the intended and foreseeable uses of this product.

254.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to provide proper, adequate and conspicuous warnings to users of LPS HDX Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

255.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to provide proper, adequate and conspicuous information to users of LPS HDX Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

256.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., had a duty to provide proper, adequate and conspicuous instructions to users of LPS HDX Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, about the safe and proper use of its product.

257.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., breached and violated their duty to provide proper, adequate and conspicuous warnings to users of LPS HDX Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, about all latent dangers resulting from the intended and foreseeable uses of this product.

258.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., breached and violated their duty to provide proper, adequate and conspicuous

warnings to users of LPS HDX Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

259.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., breached and violated their duty to provide proper, adequate and conspicuous information to users of LPS HDX Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, about all the human health hazards presented by its product.

260.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., breached and violated their duty to provide proper, adequate and conspicuous instructions to users of LPS HDX Aerosol Heavy Duty Degreaser, including plaintiff CARMINE FORMICHELLI, about the safe and proper use of its product.

261.    The defendants' failure to provide adequate warnings about the latent dangers and all health hazards presented by LPS HDX Aerosol Heavy Duty Degreaser and the defendants' failure to provide proper, adequate and conspicuous safety related information and instructions about this product, caused, contributed to and was a substantial factor resulting in plaintiff CARMINE FORMICHELLI's Parkinson's disease and other related conditions, complications, consequential medical sequelae, illnesses, injuries, harm and losses, severe conscious pain and suffering, grave injuries, permanent loss of function and use of an organ system, permanent loss of function and use of limbs, disability, debilitation, infirmity, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, occupational disability, limitations and disability in activities of

daily living, debilitation and infirmity, and loss of enjoyment of life and he will continue to suffer from the foregoing injuries, harm and losses throughout the remainder of his life.

262.    Defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., are strictly liable for the foregoing failures to provide proper, adequate and conspicuous (1) warnings of all latent dangers and all health hazards, failure to provide proper, adequate and conspicuous (2) information about all health hazards, and (3) instructions about the safe and proper use of LPS HDX Aerosol Heavy Duty Degreaser which caused, contributed to and was substantial factor resulting in plaintiff CARMINE FORMICHELLI's injuries, harm, losses and damages.

263.    The injuries, illnesses, harm, losses and damages sustained by plaintiff CARMINE FORMICHELLI were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS and were in no way caused and/or contributed to by the plaintiff.

264.    By reason of the foregoing, plaintiff CARMINE FORMICHELLI is entitled to monetary damages for past and future conscious pain and suffering, mental anguish and emotional distress, loss of income, medical expenses, and loss of enjoyment of life.

265.    By reason of the foregoing, plaintiff CARMINE FORMICHELLI is entitled to compensatory damages from the defendants for his past and future non-economic and economic injuries, harm, and losses.

266.    By reason of the foregoing, plaintiff CARMINE FORMICHELLI demands judgment against the defendants in the amount of $25,000,000.00 in compensatory damages.

**FIFTH CAUSE OF ACTION:**
**LOSS OF SERVICES AND CONSORTIUM**

267.    Plaintiffs repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "266" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

268.    That all times hereinafter mentioned, plaintiff MICHELE FORMICELLI was and is the lawfully wedded wife of plaintiff CARMINE FORMICELLI and, as such, was and is entitled to the services, consortium and society of CARMINE FORMICELLI.

269.    By reason of the foregoing negligence and strict liability of the defendants, plaintiff MICHELE FORMICELLI was deprived of the aforesaid services, consortium and society of CARMINE FORMICELLI.

270.    By reason of the foregoing, plaintiff MICHELE FORMICELLI is entitled to monetary damages for her loss of services, consortium and society.

271.    By reason of the foregoing, plaintiff MICHELE FORMICELLI is entitled to compensatory and punitive damages from defendants for her non-economic and economic injuries.

272.   By reason of the foregoing, plaintiff MICHELE FORMICELLI demands judgment against defendants in the amount of $5,000,000.00 for compensatory and punitive damages.

**WHEREFORE,** plaintiffs demand judgment awarding damages against defendants AUI, ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., in the amount of $25,000,000.00 in compensatory damages on the first cause of action of the Complaint; against defendants ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., in the amount of $25,000,000.00 in compensatory damages on each of the second, third and fourth causes of action of the Complaint; against defendants AUI, ITW PRO BRANDS, ITW PERMATEX CANADA, and ILLINOIS TOOL WORKS, INC., in the amount of $5,000,000.00 in compensatory damages on the fifth cause of action of the Complaint; the interest, costs and disbursements of this action; and such other and further relief as the court deems just and proper.

Dated:  New York, NY
        June 17, 2024

Yours, etc.,

*/s/ J. Lanni*

_____

**JOSEPH LANNI**
THE JACOB FUCHSBERG LAW FIRM, LLP
Attorneys for Plaintiff
CARMINE FORMICHELLI
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: 212.869.3500
Fax: 212.398.1532
j.lanni@fuchsberg.com

56